IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

DAVID TOMPKINS; individually and
on behalf of members of the
general public similarly
situated, and as aggrieved
employees pursuant to the
Private Attorney General Act
("PAGA"),

          Plaintiffs,

      v.

C & S WHOLESALE GROCERS, INC., a
Vermont corporation; TRACEY
LOGISTICS, LLC, an unknown
business entity; and DOES 1
through 100, inclusive,

          Defendants.

_____

2:11-cv-02836-GEB-EFB

ORDER

On December 9, 2011, Plaintiff filed a motion to remand this case to state court, arguing Defendants "fail to satisfy their heavy burden of proving the amount in controversy with legal certainty . . . ." (Pl.'s Mot. 1:25-26.) Specifically, Plaintiff argues, *inter alia*, Defendants' amount in controversy calculation is based upon unsubstantiated assumptions. Id. 1:16-24. Defendants oppose the motion, arguing "Defendants have satisfied their burden to show the jurisdictional amount in controversy." (Defs.' Opp'n 1:8-9.) For the

1 reasons stated below, Defendants have not met their burden and
2 Plaintiff's motion to remand will be granted.

3 **I.   BACKGROUND**

4        On February 3, 2011, Plaintiff filed a complaint in the
5 Sacramento County Superior Court, comprising three claims under state
6 law. (Compl. ¶¶ 56-102.) Specifically, Plaintiff alleges: (1) failure to
7 pay minimum wages and overtime wages in violation of California Labor
8 Code sections 510 and 1198; (2) civil penalties under California Labor
9 Code Private Attorneys General Act of 2004 ("PAGA"), codified at
10 California Labor Code sections 2698, et seq.; and (3) unfair business
11 practices in violation of the California Unfair Competition Law ("UCL"),
12 codified at California Business and Professions Code sections 17200, et
13 seq. Id. Each of these claims is based on Plaintiff's allegations that
14 Defendants "engaged in a uniform policy and systematic scheme of wage
15 abuse against their 'warehouse supervisors.'" (Complaint ¶ 29.)
16 Plaintiff alleges the scheme involved misclassifying Plaintiff, as well
17 as all warehouse supervisors, "as an 'exempt' employee, and paid him on
18 a salary basis, without any compensation for overtime hours worked,
19 missed meal periods or rest breaks." Id. ¶ 21. Plaintiff also alleges
20 that the amount in controversy "including claims for compensatory
21 damages, interest, and pro rata share of attorneys' fees, is less than
22 $75,000." Id. ¶ 1.

23        On March 14, 2011, Defendants removed this case to federal
24 court on the basis of diversity jurisdiction. On July 9, 2011, it was
25 remanded to state court after Defendants failed to establish the amount
26 in controversy. On October 26, 2011, Defendants removed this case to
27 federal court for the second time on the basis of diversity
28 jurisdiction. (Notice of Removal ¶¶ 15-16.) Defendants base the removal

1  on "Plaintiff's responses to C&S's written discovery as well as the
2  allegations contained within Plaintiff's Complaint." Id. ¶ 34. Plaintiff
3  subsequently filed a motion to remand, arguing Defendants still have not
4  shown diversity jurisdiction exists. (Pl.'s Mot. 1:24-26.)

5  ## II. LEGAL STANDARD

6  Removal to federal court is only proper under diversity
7  jurisdiction when a case originally filed in state court is between
8  citizens of different states and involves an amount in controversy that
9  exceeds $75,000. 28 U.S.C. § 1332(a). "The removal statute is strictly
10 construed against removal jurisdiction[, and] [t]he defendant bears the
11 burden of establishing that removal is proper." Provincial Gov't of
12 Marinduque v. Placer Dome, Inc., 582 F.3d 1083, 1087 (9th Cir. 2009)
13 (internal citations omitted).

14 The parties dispute the standard by which Defendants must
15 establish the amount in controversy. Plaintiff argues "[i]n order to
16 remand to state court, Defendants must prove to a legal certainty that
17 the amount in controversy exceeds the $75,000 jurisdictional limit."
18 (Pl.'s Mot. 4:14-15.) Defendants counter, arguing they "must show that
19 the amount in controversy is more than $75,000 by a preponderance of the
20 evidence." (Defs.' Opp'n 16:2-3.)

21 "[T]he preponderance of the evidence standard [is reserved]
22 for situations where a plaintiff seeks no specific amount in damages,
23 and a court is forced to look beyond the complaint to determine whether
24 the suit meets the jurisdictional requirements." Lowdermilk v. U.S. Bank
25 Nat'l Ass'n, 479 F.3d 994, 998 (9th Cir. 2007) (internal citations
26 omitted). Therefore, the "starting point is whether it is facially
27 apparent from the complaint that the jurisdictional amount is in
28 controversy." Id.

Here, Plaintiff alleges in his complaint as follows: "The amount in controversy for each class representative, including claims for compensatory damages, interest, and pro rata share of attorneys' fees, is less than $75,000." (Complaint ¶ 1.) Therefore,

> [t]he plain language of the jurisdictional statement encompasses all of the relief that Plaintiff[] seek[s]. The Complaint states the "amount in controversy for each class representative" is less than $75,000 . . . . The words "including [claims for compensatory damages, interest, and pro rata share of attorneys' fees]" do not render the amount in controversy ambiguous. As a matter of plain English, the word "including" indicates that the list is representative, not comprehensive. In contrast, by using the exact words "amount in controversy," Plaintiff[] ha[s] specifically stated that [his] entire potential recovery will fall below the jurisdictional thresholds.

Jones v. ADT Sec. Servs., Inc., 2012 WL 12744, at *3 (C.D. Cal. Jan. 3, 2012).

"Where the plaintiff has alleged her facts and pled her damages, and there is no evidence of bad faith, the defendant must not only contradict the plaintiff's own assessment of damages, but must overcome the presumption against federal jurisdiction." Lowdermilk, 479 F.3d at 999. "[T]he familiar legal certainty standard best captures the proof the defendant must produce." Id.; see also Ray v. Wells Fargo Bank, N.A., 2011 WL 1790123, at *3 (C.D. Cal. May 9, 2011) ("The key distinction . . . was that the plaintiffs in Guglielmino did not mention the total amount in controversy, and sought payment which would be outside the realm of damages which could, even assessed by a preponderance of the evidence standard, bring the total amount in controversy beyond the jurisdictional minimum."); Trahan v. U.S. Bank Nat'l Ass'n, 2009 WL 4510140, at *3 (N.D. Cal. Nov. 30, 2009) ("[C]ourts have concluded that where a plaintiff expressly states that the claim or

the amount in controversy is less than the jurisdictional threshold, the complaint is sufficiently certain and the legal certainty standard applies."). Since "Plaintiff[] ha[s] alleged that [his] case does not meet the diversity jurisdiction thresholds required for federal court, Defendant[s] must establish with legal certainty that the amounts in controversy exceed the statutory minimums." Jones, 2012 WL 12744, at *3.

Defendants also argue, however, "the legal certainty standard cannot apply where Plaintiff's minimum amount in controversy allegations are made in bad faith." (Defs.' Opp'n 20:19-20.) Defendants argue Plaintiff's refusal to answer certain interrogatories, "combined with his explicit admission that he has no knowledge about the number of hours he worked or the amount of damages he is claiming for even his individual claims, demonstrate that neither Plaintiff nor his counsel undertook a reasonable investigation to determine whether the Complaint's jurisdictional allegations were supported by evidence." Id. 21:5-9. Plaintiff rejoins, arguing he did not act in bad faith since he adequately responded to the interrogatories in a timely manner and "Defendants have had ample opportunity to depose Plaintiff, yet chose not to by removing the case again." (Pl.'s Reply 9:8-18.)

In support of their argument, Defendants cite to Butterworth v. Am. Eagle Outfitters, Inc., 2011 WL 4905641 (E.D. Cal. Oct. 14, 2011), arguing "'[b]ad faith' has been found in the removal context where a defendant challenged the jurisdictional allegations with specific facts, and the plaintiff failed to respond with any facts upon which the jurisdictional limitation was based." (Defs.' Opp'n 20:22-25.) However, Defendants have not sufficiently challenged Plaintiff's jurisdictional allegations with specific facts; rather the majority of Defendants' calculations are insufficient to counter Plaintiff's

5

jurisdictional allegations. Further, since Plaintiff is master of his complaint, there is a distinction between acting in bad faith and pleading damages beneath the jurisdictional threshold:

> We acknowledge that strict construction of our jurisdiction creates the potential for manipulation of the jurisdictional rules by plaintiffs who may plead for damages below the jurisdictional amount in state court with the knowledge that the claim is actually worth more, but also with the knowledge that they may be able to evade federal jurisdiction by virtue of the pleading.

Lowdermilk, 479 F.3d at 1002. Here, Defendants have not shown Plaintiff's allegations were made in bad faith, and therefore the legal certainty standard applies.

"The legal certainty standard sets a high bar for the party seeking removal, but it is not insurmountable. While the legal certainty standard is difficult to define, at a minimum, Defendants must produce enough evidence to allow a court to estimate with some certainty the actual amount in controversy." Johnson v. U.S. Vision, Inc., 415 F. App'x 841, 841 (9th Cir. 2011). "[A] defendant must set forth the underlying facts supporting its assertion that the amount in controversy exceeds the statutory minimum. In addition to the contents of the removal petition and the allegations in the complaint, the court considers summary-judgment-type evidence relevant to the amount in controversy at the time of removal." Jones, 2012 WL 12744, at *1 (internal citations and quotation marks omitted). "A court cannot base its jurisdiction on a defendant's speculation and conjecture." Id.

### III. DISCUSSION

Defendants' Notice of Removal states "Plaintiff's responses to [Defendant] C&S [Wholesale Grocers' ('C&S')] written discovery as well as the allegations contained within Plaintiff's Complaint put into

controversy an amount well in excess of $75,000, exclusive of interests and costs." (Notice of Removal ¶ 34.) Plaintiff counters in his motion to remand, arguing Defendants fail to establish to a legal certainty that the amount in controversy exceeds $75,000. (Pl.'s Mot. 1:17-26.)

Defendants' opposition brief supplements the arguments and evidence presented in the Notice of Removal as follows:

> Plaintiff's claims on his own behalf place more than $112,425 at issue as follows: Restitution of meal and rest break premiums amount to at least $46,800; civil penalties under PAGA amount to at least $18,900; other civil penalties amount to at least $10,800; overtime amounts to at least $8,775; restitution of Labor Code 203 waiting time penalties amounts to at least $7,150; and attorney fees amount to at least $20,000.

(Defs.' Opp'n 5:17-22.) In support of supplementing the Notice of Removal, Defendants contend "[t]he Court may consider information not raised in a removal petition; any new evidence or argument in a defendant's opposition to plaintiff's motion to remand is treated as an amendment to the notice of removal." Id. 7:5 n.8. Plaintiff does not respond to this argument. Therefore, the Court will "construe[] [Defendants'] opposition [brief] as an amendment to its notice of removal" under 28 U.S.C. § 1653. Cohn v. Petsmart, Inc., 281 F.3d 837, 840 n.1 (9th Cir. 2002) (citing § 1653); see also Lyon v. W.W. Grainger Inc., 2010 WL 1753194, at *3 (N.D. Cal. Apr. 29, 2010) ("This order, however, treats defendant's opposition as an amendment to the notice of removal."); Alexander v. FedEx Ground Package Sys., Inc., 2005 WL 701604, at *2 (N.D. Cal. Mar. 25, 2005) ("[C]onstruing a defendant's opposition to a motion for remand as an amendment to its notice for removal is proper.").

A.    UCL Claims

"A UCL action is an equitable action by means of which a

plaintiff may recover money or property obtained from the plaintiff or persons represented by the plaintiff through unfair or unlawful business practices." Cortez v. Purolator Air Filtration Prod. Co., 23 Cal. 4th 163, 173 (2000).

> Section 17203 [of the UCL], under the authority of which a restitutionary order may be made, provides: "Any person who engages, has engaged, or proposes to engage in unfair competition may be enjoined in any court of competent jurisdiction. The court may make such orders or judgments . . . as may be necessary to restore to any person in interest any money or property, real or personal, which may have been acquired by means of such unfair competition." . . . Damages are not available under section 17203.

Id. "The question therefore presented is whether the remedies sought by Plaintiff[] are properly characterized as restitutionary (and thus recoverable), or as compensatory damages (unrecoverable)." Tomlinson v. Indymac Bank, F.S.B., 359 F. Supp. 2d 891, 893 (C.D. Cal. 2005).

Further, the California Supreme Court has held: "[s]ection 17208 is clear. It provides that '[any] action to enforce any cause of action under this chapter shall be commenced within four years after the cause of action accrued. . . . [It] admits of no exceptions." Cortez, 23 Cal. 4th at 178. Therefore, "[a]ny action on any UCL cause of action is subject to the four-year period of limitations created by that section." Id. at 179.

Plaintiff alleges the following violations in his UCL claim:

> Defendants' policies and practices of requiring employees, including Plaintiff and the other class members, to work overtime without paying them proper compensation violate California Labor Code sections 510 and 1198. Additionally, Defendants' policies and practices of requiring employees, including Plaintiff and the other class members, to work through their meal and rest periods without paying them proper compensation violate California Labor Code sections 226.7 and 512(a). Moreover, Defendants' policies and practices of failing to timely pay wages to Plaintiff and the other class

8

members violate California Labor Code sections 201,
202, and 204. Defendants also violated California
Labor Code sections 226(a), and 1174(d).

(Complaint ¶ 90.) Defendants argue these violations place at least

$62,725 in controversy.

### i.   Meal and Rest Break Claims

Defendants argue Plaintiff's "meal and rest break claims place

at least $46,800 in controversy." (Defs.' Opp'n 7:3-5.) Plaintiff

counters, arguing "Defendants use the improper statute of limitations

period and then improperly calculate meal and rest break violations by

allowing Plaintiff to recover for one missed meal period and one missed

rest break for each day that Plaintiff worked . . . ." (Pl.'s Reply 4:7-

9 (emphasis omitted).)

Defendants argue "such claims have a four-year limitations

period." (Defs.' Opp'n 7:15.) Plaintiff argues, however, "a three-year

statute of limitations applies here." (Pl.'s Reply 5:2.)

Section 226.7, subdivision (a) provides, "No
employer shall require any employee to work during
any meal or rest period mandated by an applicable
order of the Industrial Welfare Commission."
Subdivision (b) of section 226.7 further provides
that, "If an employer fails to provide an employee
a meal period or rest period in accordance with an
applicable order of the Industrial Welfare
Commission, the employer shall pay the employee one
additional hour of pay at the employee's regular
rate of compensation for each work day that the
meal or rest period is not provided."

Murphy v. Kenneth Cole Prod., Inc., 40 Cal. 4th 1094, 1102 (2007)

(emphasis omitted). The California Supreme Court has held payments under

section 226.7 are restitutionary: "The statute's plain language, the

administrative and legislative history, and the compensatory purpose of

the remedy compel the conclusion that the 'additional hour of pay' is a

premium wage intended to compensate employees, not a penalty." Id. at

1114 (internal citations omitted); see also Doe v. D.M. Camp & Sons, 2009 WL 921442, at *13 (E.D. Cal. Mar. 31, 2009) ("[P]ayments under [s]ection 226.7 are restitutionary because they are akin to payment of overtime wages to an employee: both are earned wages and thus recoverable under the UCL."). Therefore, since "an award under [s]ection 226.7 is not a penalty, the four-year statute of limitations governing UCL claims . . . applies." Tomlinson v. Indymac Bank, F.S.B., 359 F. Supp. 2d 891, 898 (C.D. Cal. 2005).

Further, Defendants argue "Plaintiff puts at issue at least one alleged meal break premium payment and one alleged rest break premium payment—two hours of pay—for every work day." (Defs.' Opp'n 7:21-22.) Plaintiff argues, however, "the correct method is to calculate only one premium wage hour for either a missed meal or rest period." (Pl.'s Reply 6:5-6.) The California Supreme Court "has not decided in a published opinion whether section 226.7 permits two premium payments per work day rather than just one . . . ." United Parcel Serv., Inc. v. Superior Court, 196 Cal. App. 4th 57, 63 (2011). However, a California appellate court held that the statute permits two premium payments per work day as follows:

> Therefore, while section 226.7 is reasonably susceptible to alternative interpretations (one allowing a single premium payment per work day and another allowing up to two), we believe it is more reasonable to construe the statute as permitting up to two premium payments per workday—one for failure to provide one or more meal periods, and another for failure to provide one or more rest periods.

Id. at 69. District courts in California are split on this issue. See, e.g., Marlo v. United Parcel Serv., Inc., 2009 WL 1258491, at *7 (C.D. Cal. May 5, 2009) ("Marlo may recover up to two additional hours of pay on a single work day for meal period and rest break violations

1    . . . ."); <u>Corder v. Houston's Restaurants, Inc.</u>, 424 F. Supp. 2d 1205,

2    1207 (C.D. Cal. 2006)("Thus, the plain wording of the statute is clear

3    that an employer is liable per work day, rather than per break not

4    provided."). However, it is unnecessary reach this issue since even

5    assuming, *arguendo*, Plaintiff could recover two premium payments per

6    work day and, therefore, $46,800 were included in the amount-in-

7    controversy calculation, Defendants do not establish to a legal

8    certainty that the total amount in controversy exceeds $75,000.

9                    **ii.  Failure to Pay Overtime Claim**

10            Defendants' amount-in-controversy calculation in their Notice

11   of Removal includes Plaintiff's UCL failure to pay overtime claim.

12   Although Defendants provided an estimate of two hours of overtime pay

13   per day in their Notice-of-Removal amount-in-controversy calculations,

14   Defendants amend this argument in their reply brief, arguing "Defendants

15   assume average daily overtime of a mere 15 minutes . . . ." (Defs.'

16   Opp'n 10:24-25.)  Plaintiff rejoins, arguing "Defendants' new

17   calculations assume without any evidence that Plaintiff worked at least

18   fifteen (15) minutes of overtime each day." (Pl.'s Reply 3:10-11.)

19            In support of this argument, Defendants provide three of

20   Plaintiff's responses to C&S's Special Interrogatories. Defendants rely

21   upon "Plaintiff's responses to Special Interrogatories [Numbers] 1 and

22   19[, which] state that Plaintiff worked in excess of 8 hours per day on

23   every day that he worked." <u>Id.</u> 10:18-19. Further, Defendants argue

24   Plaintiff's response to Special Interrogatory No. 12, in which

25   Plaintiff states he "was never provided a second meal period[,]"

26   supports this assumption since "he is entitled [to a second meal period]

27   only if he works more than ten hours." (Bradford Decl. Ex. C 9:13-23;

28   Defs.' Opp'n 10:21.)  However, Defendants provide no evidence

establishing either how they reached the fifteen minutes per day number
or the frequency with which Plaintiff was denied a second meal period.

Therefore, although under California law, a "Plaintiff can
seek restitution of unpaid overtime wages via the UCL[,]" Defendants'
evidence is insufficient under the legal certainty standard. <u>Pineda v.
Bank of America, N.A.</u>, 50 Cal. 4th 1389, 1400 (2010); see also <u>Cortez</u>,
23 Cal. 4th at 178 ("An order that earned wages be paid is . . . a
restitutionary remedy authorized by the UCL."). "With no evidentiary
basis, there is no reason why a figure of [fifteen] minutes of overtime
. . . would have any more or less legitimacy than the two hour figure."
<u>Jones v. ADT Sec. Servs., Inc.</u>, 2012 WL 12744, at *5 (C.D. Cal. Jan. 3,
2012). "While Defendant[s are] not required to prove the merits of
[Plaintiff's] case, such baseless speculation cannot satisfy this
Court's duty to examine whether it has jurisdiction to hear this case."
<u>Id.</u> Therefore, Defendants' failure to pay overtime estimate will not be
included in the amount-in-controversy calculation.

### iii. Failure to Timely Pay Wages Upon Termination Claim

Defendants also argue Plaintiff's failure to timely pay wages
upon termination claim "places at least $7,150 in controversy." (Defs.'
Opp'n 11:10.) Plaintiff does not respond to this argument. Although
Plaintiff alleges a failure to timely pay wages upon termination claim
under the UCL, "section 203 penalties cannot be recovered as restitution
under the UCL" since section 203 "is not designed to compensate
employees for work performed. Instead, it is intended to encourage
employers to pay final wages on time, and to punish employers who fail
to do so." <u>Pineda v. Bank of America, N.A.</u>, 50 Cal. 4th 1389, 1401-02
(2010); see also <u>Tomlinson v. Indymac Bank, F.S.B.</u>, 359 F. Supp. 2d 891,
895 (C.D. Cal. 2005) ("This type of payment clearly is not

restitutionary, and thus cannot be recovered under the UCL."). Therefore, since Plaintiff cannot recover section 203 penalties under the UCL, Defendants have not established to a legal certainty that Plaintiff has placed $7,150 in controversy under his UCL failure to timely pay wages claim. Cf. Conrad Assoc. v. Hardford Accident & Indem. Co., 994 F. Supp. 1196, 1200 (N.D. Cal. 1998) (holding the defendant's amount-in-controversy calculations for attorney fees insufficient since "only those attorney fees incurred in seeking policy benefits are recoverable under Brandt").

### C. PAGA Civil Penalties

#### i. Plaintiff's PAGA Penalties

Defendants argue "Plaintiff, on his own behalf . . . seeks to recover PAGA penalties for alleged violations of at least seven Labor Code provisions, thereby placing at issue at least $18,900." (Defs.' Opp'n 8:8-9.) Plaintiff rejoins, arguing Defendants' calculations are speculative. (Pl.'s Reply 6:14-16.)

Under PAGA, "an 'aggrieved employee' may bring a civil action personally and on behalf of other current or former employees to recover civil penalties for Labor Code violations." Arias v. Superior Court, 46 Cal. 4th 969, 980 (2009) (quoting Cal. Lab. Code § 2699(a)). In section 2699(f)(2), "PAGA provides the applicable civil penalty if a particular Labor Code provision does not specify one." Villacres v. ABM Indus. Inc., 189 Cal. App. 4th 562, 580 (2010); see also Cal. Lab. Code § 2699(f) ("For all provisions of this code except those for which a civil penalty is specifically provided, there is established a civil penalty for a violation of these provisions."). Therefore, PAGA "distinguishes between a provision of the Labor Code that provides its own civil penalty and a provision with no specified penalty." Villacres,

189 Cal. App. 4th at 580. For example, the section 2699(f)(2) penalty would not apply to a section 510 overtime claim: "a failure to pay overtime compensation ([section] 510) is subject to the civil penalty provided in section 558, namely $50 per employee per pay period for an initial violation, and a penalty of $100 per employee per pay period for each subsequent violation." Id. In sum, "[a]lthough both types of civil penalties are recoverable under the PAGA, the amount of the penalty may differ." Id.

Here, Defendants base all of their PAGA calculations on the penalties enumerated in section 2699(f)(2): $100.00 per pay period for the initial violation and $200.00 per pay period for each subsequent violation. See Schuyler v. Morton's of Chicago, Inc., 2011 WL 280993, at *5 (C.D. Cal. Jan. 25, 2011) ("Section 2699(f)(2) provides for recovery of penalties of (1) $100.00 per pay period for the initial violation; and (2) $200.00 per pay period for each subsequent violation.") Defendants argue that basing their calculation on this provision is correct since "Plaintiff seeks to recover penalties in the amount of $100 per pay period for the initial violation and $200 per pay period for each subsequent violation." (Defs.' Opp'n 8:13-14.)

However, this argument misconstrues Plaintiff's allegations. Under PAGA, Plaintiff seeks as follows:

[A]ll statutory penalties against Defendants . . . including but not limited to . . .

Penalties under California Labor Code section 2699 in the amount of a hundred dollars ($100) for each aggrieved employee per pay period for the initial violation, and two hundred dollars ($200) for each aggrieved employee per pay period for each subsequent violation;

Penalties under California Code of Regulations Title 8 section 11070 in the amount of fifty dollars ($50) for each aggrieved employee per pay period for the initial violation, and one hundred

dollars ($100) for each aggrieved employee for each
subsequent violation;

Penalties under California Labor Code section
210 in addition to, and entirely independent and
apart from, any other penalty provided in the
California Labor Code in the amount of a hundred
dollars ($100) for each aggrieved employee per pay
period, and two hundred dollars ($200) for each
aggrieved employee per pay period for each
subsequent violation; and

Any and all additional penalties and sums as
provided by the California Labor Code and/or other
statutes.

(Complaint ¶ 84; see also id. ¶ 14 ("For civil penalties to California

Labor Code sections 2699(a), (f), and (g) plus costs and attorneys' fees

for violation of California Labor Code sections 510[,] 1194, 1197,

1197.1 and 1198.").) Further, Plaintiff alleges specific civil penalties

distinct from section 2699(f)(2) in his Complaint:

Pursuant to California Labor Code section 1197.1,
Plaintiff and the other class members are entitled
to recover a penalty of one hundred dollars ($100)
for the initial failure to timely pay each employee
minimum wages, and two hundred and fifty dollars
($250) for each subsequent failure to pay each
employee minimum wages.

Id. ¶ 69. Therefore, since Plaintiff has not alleged he seeks section

2699(f)(2) penalties for each alleged violation, as Defendants argue,

and application of this penalty to certain alleged violations is

contrary to California law, Defendants have not shown to a legal

certainty that Plaintiff has placed $18,900 in controversy for his

individual PAGA claims.

### ii.  Aggregated PAGA Claims

Defendants also argue the amount in controversy is met since

aggregation of claims is appropriate under PAGA. Defendants' Notice of

Removal states: "In seeking penalties under PAGA, Plaintiff seeks to

recover not only civil penalties under PAGA for himself, but also for

the group of more than 35 allegedly aggrieved current and former warehouse supervisors who worked for Tracy Logistics . . . during the period of one year prior to the filing of the Complaint." (Notice of Removal ¶ 38.) Plaintiff rejoins, arguing his PAGA claims should not be aggregated: "It is not enough simply to argue that the total amount in controversy for all aggrieved employees exceeds $75,000. Defendants must show that Plaintiff's individual penalty claims exceed $75,000." (Pl.'s Mot. 8:24-26 (emphasis omitted).)

In multiple plaintiff cases, determining whether to aggregate individual claims for purposes of calculating the amount in controversy is based on "whether each plaintiff is asserting an individual right or, rather, together the plaintiffs unite to enforce a single title or right in which they have a common and undivided interest." In re Ford Motor Co./Citibank (South Dakota), N.A., 264 F.3d 952, 959 (9th Cir. 2001). "As a general rule, multiple plaintiffs who assert 'separate and distinct' claims in a lawsuit may not aggregate their claims to satisfy the jurisdictional amount." Urbino v. Orkin Servs. of Cal., Inc., 2011 WL 4595249, at *5 (C.D. Cal. Oct. 5, 2011). "The Ninth Circuit has not yet ruled on the issue of whether individual claims in a PAGA action are 'separate and distinct,' 'common and undivided,' or otherwise. District courts within the Ninth Circuit are split on the issue." Id.

However, the Court does not need to reach this issue since even assuming, arguendo, it is appropriate to aggregate claims under PAGA, Defendants have not shown to a legal certainty that the aggregated PAGA claims would exceed $75,000. In calculating the aggregated amount-in-controversy, Defendants only provide summary-judgment-type evidence for certain of Plaintiff's PAGA claims, yet make the conclusory assertion that "each of the alleged additional six Labor Code violations

16

1  places an additional $326,900 in controversy per violation." (Defs.'

2  Opp'n 15:26-27.) Further, Defendants rely upon the same misconstruction

3  of Plaintiff's Complaint as in the individual claims, arguing Plaintiff

4  seeks civil penalties under section 2699(f); specifically Defendants

5  argue:

6              Plaintiff asserts that "Defendants' failure to
              provide complete and accurate wage statements to
7             . . . aggrieved employees" violated [s]ection
              226(a) and entitles him to a PAGA penalty "in the
8             amount of [$100] for each aggrieved employee per
              pay period for the initial violation, and [$200]
9             for each aggrieved employee per pay period for each
              subsequent violation."

10

11  Id. 14:24-28. Therefore, Defendants have not established to a legal

12  certainty that the aggregated PAGA claims will exceed $75,000.

13      **D.   Attorneys' Fees**

14          Defendant argues "Plaintiff cannot, in good faith, assert that

15  the amount of attorneys' fees in controversy is less than $20,000."

16  (Defs.' Opp'n 11:24-25.) Plaintiff rejoins, arguing "Defendants again

17  failed to submit any supporting evidence relating to the amount of

18  attorneys' fees in controversy." (Pl.'s Reply 8:11-13.)

19          "[W]here an underlying statute authorizes an award of

20  attorneys' fees, either with mandatory or discretionary language, such

21  fees may be included in the amount in controversy." Galt G/S v. JSS

22  Scandinavia, 142 F.3d 1150, 1156 (9th Cir. 1998). However, Defendants

23  must still establish to a legal certainty standard the reasonable value

24  of attorneys fees. See Roe v. Teletech Customer Care Mgmt. (Colo.), LLC,

25  2007 WL 1655172, at *5 (W.D. Wash. June 6, 2007) ("[W]hile TeleTech has

26  demonstrated that attorneys' fees . . . may exceed $30,000, it has not

27  demonstrated that in this case attorneys' fees would exceed $30,000 by

28  a legal certainty) (emphasis omitted); see also Pulera v. F & B, Inc.,

1 | 2008 WL 3863489, at *5 (E.D. Cal. Aug. 19, 2008) ("Without this support

2 | for Plaintiff's reasonably anticipated fees, the amount in controversy

3 | claimed by Plaintiff falls short of the jurisdictional minimum.").

4 |       Defendants' opposition brief states:

5 |         Plaintiff's attorney fees likely already exceed
        $20,000, or about 54 hours of work at $375 per

6 |         hour. Plaintiff's counsel has investigated and
        developed the facts for his lawsuit, prepared a

7 |         comprehensive complaint, prepared two remand
        motions, prepared extensive discovery propounded on

8 |         Defendants, responded to discovery propounded by
        Defendants, engaged in extensive meet and confers

9 |         regarding discovery, prepared a detailed opposition
        to a motion to compel Plaintiff's deposition,

10 |         engaged in a Rule 26 conference, and prepared a
        Rule 26(f) joint report.

11 |

12 | (Def.'s Opp'n 12:15 n.11.) Although Plaintiff could recover attorney

13 | fees under certain statutes at issue in this action, "Defendant[s]

14 | ha[ve] not submitted any evidence that sets forth a reasonable estimate

15 | of attorney fees likely to be incurred based on [P]laintiff's counsel's

16 | hourly rate, the number of hours counsel expects to spend on this case,

17 | attorney fees that have accrued to date, or attorney fee awards in

18 | similar cases." Richardson v. Servicemaster Global Holdings Inc., 2009

19 | WL 4981149, at *4 (N.D. Cal. Dec. 15, 2009). Since Defendants'

20 | statements are insufficient under the legal certainty standard, the

21 | asserted $20,000 in attorneys' fees cannot be included in the amount in

22 | controversy.

23 |     **E.  Other Civil Penalties**

24 |       Defendants also argue Plaintiff's "civil penalties under

25 | California Code of Regulations Title 8 § 11070 ('Wage Order 7-2001') and

26 | Cal. Lab. Code § 210 . . . place at least an additional $10,800 at

27 | issue." (Defs.' Opp'n 9:14-16.) However, even assuming, *arguendo*, this

28 | amount is included in the amount-in-controversy calculation, Defendants

18

1  have not established to a legal certainty that the total amount in
2  controversy exceeds $75,000.

3      **F.   Jurisdictional Discovery**

4          Alternatively, Defendants request that "the Court allow the
5  parties to engage in limited discovery regarding the amount in
6  controversy on Plaintiff's individual claims." (Defs.' Opp'n 21:18-19.)
7  Plaintiff rejoins, arguing "Defendants have failed to explain why they
8  believe Plaintiff has any information that they could not have obtained
9  prior to removal." (Pl.'s Reply 9:27-10:2.)

10         Although "it may be appropriate to allow discovery relevant to
11 jurisdictional amount prior to remanding[,] . . . [Ninth Circuit]
12 decisions do not indicate that such discovery is <u>required</u>." <u>Abrego</u>
13 <u>Abrego v. The Dow Chem. Co.</u>, 443 F.3d 676, 691 (9th Cir. 2006) (internal
14 quotation marks and citations omitted). Thus, the decision to allow
15 jurisdictional discovery is within the discretion of the district court.
16 <u>Id.</u> Here, Defendants have not shown why such discovery is necessary,
17 especially since Defendants have twice removed this action from state
18 court despite being unable to meet their burden in establishing the
19 amount in controversy and the Court has considered the supplemental
20 evidence and argument presented in their opposition brief. Therefore,
21 given the posture of this case, the Court is "[disinclined] to entertain
22 substantial, burdensome discovery on jurisdictional issues," and
23 Defendants' request for jurisdictional discovery is denied. <u>Id.</u> at 692
24 (internal quotation marks omitted).

25      **IV.   CONCLUSION**

26         For the stated reasons, Defendants have not established to a
27 legal certainty that the amount in controversy exceeds $75,000.
28 Therefore, Plaintiff's remand motion is GRANTED and this case is

1  REMANDED to the Superior Court of California for the County of

2  Sacramento.

3  Dated:  February 24, 2012

4

5  _____

   GARLAND E. BURRELL, JR.

6  United States District Judge

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28